**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Michelle Miller; Nathan Miller, | ) | No. CV-09-1954-PHX-FJM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **ORDER** |
| | ) ) | |
| American Standard Insurance Company of Wisconsin, | ) ) ) | |
| Defendant. | ) ) ) | |
| | ) | |

**I**

The issue presented is whether Arizona's Uninsured/Underinsured Motorist Act, A.R.S. § 20-259.01, permits an insurer to reduce underinsured motorist (UIM) coverage by the amount paid under a medical expense coverage provision in the same automobile insurance policy.  We have before us plaintiffs' motion to certify a class (doc. 34), defendants' response (doc. 68), plaintiffs' reply (doc. 73); plaintiffs' motion for summary judgment (doc. 35), defendants' response and cross-motion for partial summary judgment (doc. 66), plaintiffs' response and reply (doc. 75), and defendants' reply (doc. 76).

Plaintiffs purchased an automobile insurance policy ("Policy") from defendant American Standard that included uninsured ("UM") and underinsured ("UIM") motorist coverage with limits of $250,000 each, and medical expense coverage of $25,000.  On October 24, 2006, plaintiff Michelle Miller was involved in an automobile accident in which

1  she was rear-ended by another car.  She alleges that she suffered back and neck soft tissue

2  injuries and incurred approximately $13,000 in medical bills, the majority of which were for

3  chiropractic, physical therapy, and massage therapy.  She settled with the at-fault driver and

4  received his full liability insurance limit of $15,000.  She then filed a medical payments

5  ("medpay") claim with her own insurance carrier, American Standard, which in turn paid her

6  the full amount of her medical expenses ($12,976.98).  In addition, plaintiff's health insurer,

7  Aetna, paid her medical providers directly.

8  Plaintiff then filed a claim for UIM benefits with American Standard, this time

9  including not only medical bills, but also a claim for pain and suffering, and for treatment of

10  ongoing symptoms.  American Standard denied plaintiff's UIM claim, explaining that she

11  had already been fully compensated for her damages through her medical expense coverage

12  and the liability carrier's settlement.  American Standard based its denial of coverage on the

13  non-duplication limitation in the Policy's medpay coverage provision, which provides:

14  No one will be entitled to duplicate payments for the same elements of loss.
   Any amount we pay under this coverage to or for an injured person applies
15  against any other coverage applicable to the loss so that there is not a
   duplication of payment.
16
   PSOF, ex. 1.  Plaintiffs then filed this action arguing that the medpay endorsement clause
17
   offsetting   medpay   benefits   against   UIM   coverage   is   impermissible   under   the
18
   Uninsured/Underinsured Motorist Act, A.R.S. § 20-259.01.
19

20

**II**

21

22  We first consider whether this matter should proceed as a class action under Rule 23,

   Fed. R. Civ. P.  In order to support class certification, plaintiffs must satisfy the requirements
23
   of both Rule 23(a) and (b).  Under Rule 23(a), plaintiffs must establish (1) numerosity of the
24
   parties; (2) commonality of legal and factual issues; (3) typicality of claims and defenses; and
25
   (4) adequacy of representation.  Plaintiffs must then show that the proposed class action fits
26
   within at least one of the three categories of class actions described in Rule 23(b).
27
   "[W]hether the suit is appropriate for class resolution must be actually demonstrated, not just
28

1   alleged, to the district court's satisfaction." Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571,

2   590 (9th Cir. 2010).   Failure to meet any one of the requirements set forth in Rule 23

3   precludes class certification.

4        Rule 23(a)(1) requires that plaintiffs establish that the putative class is "so numerous

5   that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Plaintiffs alleged in

6   their original complaint that they were insured under an automobile policy issued by

7   American Family.  They later discovered that their policy was actually issued by American

8   Standard.  Because they had no contractual relationship with American Family, we ruled that

9   plaintiffs had standing to sue on behalf of American Standard insureds only.  Order of July

10  23, 2010 (doc. 88).  Therefore, plaintiffs' proposed class is limited to eligible American

11  Standard insureds.  Nevertheless, plaintiffs attempt to satisfy the Rule 23(a)(1) numerosity

12  requirement by reference to American Family, not American Standard, insureds.

13       As defined by plaintiffs, putative class members must have (1) purchased both

14  medpay and UIM coverage from defendant, (2) been in an accident caused by an

15  underinsured driver, (3) received medpay benefits, and (4) had UIM benefits offset by

16  medpay benefits. Motion at 2-3.  Plaintiffs present evidence of American Family's market

17  share and underinsured claims experience from which they hope to extrapolate the number

18  of potential American Family class members. But as we have already stated, only American

19  Standard insureds are eligible for class membership. Plaintiffs' evidence related to American

20  Family insureds is not relevant to satisfy the numerosity requirement.

21       American Standard asserts that it performed its own analysis to determine putative

22  class membership and identified only 3 potential insureds.  Plaintiffs respond only by

23  acknowledging that "there is a very limited class size of American Standard insureds." Reply

24  at 2.  Apparently recognizing their inability to satisfy the numerosity requirement with

25  respect to American Standard insureds, plaintiffs sought to add Joseph Garcia, an American

26  Family insured, as an additional named plaintiff.  However, because Mr. Garcia had settled

27  his underinsured benefits claim with American Family, we denied plaintiffs' motion for leave

28  to amend on the basis of futility. Order of July 23, 2010 (doc. 88).  As a result, plaintiffs are

1  left with 3 putative class members.  This number is obviously not so numerous that joinder

2  of all members is impracticable.  Because plaintiffs' failure to satisfy the numerosity

3  requirement is fatal to their motion, we need not address the remaining class certification

4  requirements.  Therefore, it is ordered denying plaintiffs' motion for class certification (doc.

5  34).  We proceed to consider the merits of plaintiffs' claim on their own behalf.

**III**

8  Underinsured motorist coverage protects an insured when a tortfeasor's liability limits

9  are insufficient to pay for all damages incurred.  Arizona's Uninsured/Underinsured Motorist

10  Act requires insurers to offer uninsured and underinsured coverage.  A.R.S. § 20-259.01(A),

11  (B).  The Act defines UIM coverage as "coverage for a person if the sum of the limits of

12  liability under all bodily injury or death liability bonds and liability insurance policies

13  applicable at the time of the accident is less than the total damages for bodily injury or death

14  resulting from the accident."  Id. § 20-259.01(G).  The Act further provides, "[t]o the extent

15  that the total damages exceed the total applicable liability limits, the underinsured motorist

16  coverage . . . is applicable to the difference."  Id.  While these sound like "words of

17  description, not applicability," Taylor v. Travelers Indem. Co. of America, 198 Ariz. 310,

18  322, 9 P.3d 1049, 1061 (2000) (Martone, J. dissenting), the Arizona Supreme Court has read

19  them to define the extent of coverage.  Based on this language, plaintiffs contend that the

20  only allowable offset against UIM coverage is the "total applicable liability limits." Relying

21  on Cundiff v. State Farm Mut. Auto. Ins. Co., 217 Ariz. 358, 174 P.3d 270 (2008), plaintiffs

22  argue that American Standard's practice of deducting from UIM coverage amounts paid

23  under the medpay benefits endorsement is prohibited.

24  In Cundiff, the Arizona Supreme Court considered the scope of allowable offsets

25  against UIM coverage and held that the Act precludes an insurer from reducing UIM

26  coverage based on the insured's receipt of workers' compensation benefits.  Id. at 361, 174

27  P.3d at 273.  The court found that the statutory language unambiguously "defines the 'total

28  applicable liability limits' as the only amount deducted from the insured's total damages

- 4 -

1  when calculating UIM coverage." Id. at 360, 174 P.3d at 272. Accordingly, the court

2  reasoned that workers' compensation benefits can be subtracted from UIM coverage "only

3  if those benefits constitute part of the applicable 'liability insurance' under the [Act]." Id.

4  at 361, 174 P.3d at 273. Because workers' compensation is not a coverage "based on fault,"

5  the court held that it is not "liability insurance," and therefore cannot be applied to reduce

6  UIM coverage. Id. The court concluded that the policy's workers' compensation offset

7  provision was void and unenforceable.

8         Cundiff broadly expanded the court's holding in Taylor v. Travelers Indem. Co. of

9  America, 198 Ariz. 310, 9 P.3d 1049 (2000), that a policy provision that prohibited an

10  insured from recovering *any* UIM coverage after receiving *any* portion of liability coverage

11  under the same policy was not authorized by the statute. The court rejected the policy

12  exclusion, but only to the extent that it "completely eliminat[ed] UIM coverage." Id. at 315,

13  9 P.3d at 1054. It approved of the exclusion to the extent that it is "read solely to limit

14  duplication of recovery." Id. (citing Rashid v. State Farm Mut. Auto. Ins. Co., 163 Ariz. 270,

15  275, 787 P.2d 1066, 1071 (1990) (finding that "most courts recognize the clause may be

16  properly applied only to prevent duplication of benefits)). In contrast, Cundiff expansively

17  characterized Taylor's holding as "refus[ing] to allow an offset not included in the statute,"

18  even when the result is a duplicate or windfall recovery. Cundiff, 217 Ariz. at 361-62, 174

19  P.3d at 273-74.

20         For more than twenty years, the Arizona Supreme Court has routinely rejected

21  attempts by insurers to limit their UIM exposure with offsets not permitted by the statute.

22  See Taylor, 198 Ariz. at 315, 9 P.3d at 1054 (and cases cited). However, Arizona courts

23  have also consistently recognized an injured insured's right to recover UIM coverage only

24  up to actual damages. The statute itself defines the outside limit of UIM coverage based on

25  "total damages . . . resulting from the accident." A.R.S. § 20-259.01(G). And until Cundiff,

26  the cases had consistently recognized the enforceability of non-duplication provisions,

27  provided that the insured is otherwise fully compensated.

28         For example, in Taylor the court sanctioned the use of an offset provision to prevent

1   double recovery, notwithstanding that the offset provision was not expressly authorized by

2   the Uninsured/Underinsured Motorist Act.  While the court noted that its long line of UM

3   and UIM cases consistently prohibited an insurer from eliminating or reducing UIM recovery

4   "below actual damages," the court expressly recognized that an offset provision was

5   permissible "to limit duplication of recovery."  198 Ariz. at 315, 9 P.3d at 1054.

6        Similarly, in Brown v. State Farm Mut. Auto. Ins. Co., 163 Ariz. 323, 788 P.2d 56

7   (1989), the court stated that "[i]nsurers justifiably include other insurance clauses to prevent

8   the insured from *duplicating* recovery.  We do not retreat from the established rule that an

9   insurer may restrict recovery to the insured's actual damages by use of prorata, offset, or

10  escape clauses."  Id. at 328, 788 P.2d at 61 (emphasis in original); see also Rashid, 163 Ariz.

11  at 273, 787 P.2d at 1069 (holding that recovery under more than one coverage is appropriate

12  "*until the claimant is fully indemnified*") (emphasis in original); Spain v. Valley Forge Ins.

13  Co., 152 Ariz. 189, 194, 731 P.2d 84, 89 (1987) (holding that the injured insured was entitled

14  to recover under the UM provision so long as his recovery did not exceed actual damages).

15       Notwithstanding this well-established precedent, Cundiff rejected the insurer's

16  argument that controlling cases allowed the offset provision in order to prevent double

17  recovery.  217 Ariz. at 362, 174 P.3d at 274.  Instead, the court instructed the insurer to

18  "direct its policy arguments [regarding double recovery] to the legislature rather than to the

19  courts."  Id.

20       In reaching its conclusion, Cundiff also distinguished Schultz v. Farmers Ins. Group,

21  167 Ariz. 148, 805 P.2d 381 (1991), a case strikingly similar to the one before us.  In Schultz,

22  the court held that an insurer may offset UM benefits by the amount paid under medical

23  payments coverage in order to prevent double recovery, so long as the insured receives full

24  compensation for damages incurred.  167 Ariz. at 152, 805 P.2d at 385.  Cundiff declined to

25  follow Schultz, however, for the reason that it involved an offset to UM, not UIM, benefits.

26  Cundiff, 217 Ariz. at 362, 174 P.3d at 274.  The court explained that the statutory definition

27  of UM coverage expressly provides that such coverage is "subject to the terms and conditions

28  of that coverage," see A.R.S. § 20-259.01(E), while the UIM statutory provision does not

1   contain a similar limitation, see A.R.S. § 20-259.01(G).

2        Notwithstanding this definitional difference, the Arizona Supreme Court had, until

3   Cundiff, consistently recognized that "[i]dentical policy considerations apply to UIM

4   coverage . . . as apply to UM coverage," and thus "coverage questions about the effect of the

5   other insurance clause in UIM coverage provisions generally are treated in the same manner

6   as similar disputes that involve UM insurance." Brown, 163 Ariz. at 327 n.6, 788 P.2d at 60

7   n.6; see also Taylor, 198 Ariz at 313 n.3, 9 P.3d at 1052 n.3 (coverage questions for UM and

8   UIM generally treated the same); Schultz, 167 Ariz. at 150, 805 P.2d at 383 (applying both

9   UM and UIM cases to UM benefits issue).

10        American Standard urges us to limit Cundiff to its literal holding, i.e., "the UMA's

11  definition of UIM coverage precludes an insurer from reducing such coverage based on the

12  insured's receipt of workers' compensation benefits." Cundiff, 217 Ariz. at 359, 174 P.3d

13  at 271.  It argues that medpay coverage from the same carrier is different.  We agree that it

14  is different, but not in ways that would have mattered under the absolutist approach of the

15  Arizona Supreme Court.  That court categorically stated that "the plain and unambiguous

16  statutory text defines the 'total applicable liability limits' as the *only* amount deducted from

17  the insured's total damages when calculating UIM coverage." Id. at 360, 174 P.3d at 272

18  (emphasis added).  And this, according to that court, is true, even where, as here, it results

19  in duplicate recovery.  That court would tell the insurer to "direct its policy arguments to the

20  legislature rather than to the courts." Id. at 362, 174 P.3d at 274.

21        Accordingly, because the Policy's medpay endorsement provision is not "liability"

22  coverage, we conclude that it cannot be used to offset UIM payments.  Plaintiffs' motion for

23  partial summary judgment is granted to this extent.

24

25                                    **IV**

26        **IT IS ORDERED DENYING** plaintiffs' motion for class certification (doc. 34).

27        **IT IS ORDERED GRANTING** plaintiffs' motion for partial summary judgment on

28  the unenforceability of the Policy's medical payments offset provision (doc. 35).

1    Plaintiffs have conceded that their bad faith and punitive damages claims should be

2    dismissed.  Plaintiffs' Reply at 8.  Therefore, **IT IS ORDERED GRANTING** defendant's

3    cross-motion for summary judgment on these claims, and **DENYING** defendant's cross-

4    motion on the breach of contract claim (doc. 66).

5    DATED this 2nd day of December, 2010.

6

7    _Frederick J. Martone_

8    Frederick J. Martone
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28